IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. JKB-13-084** |
| | : | |
| **TYSON HINCKLE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

...ooOoo...

DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR A HEARING PURSUANT TO *KASTIGAR v. UNITED STATES*

Come now Defendant Tyson Hinckle, through his counsel, Christopher Davis, Defendant Michael Morgan, through his counsel, Christopher Purpura, Defendant Reginald Martin, through his counsel, Ty Kelly; Defendant Edward Stigile, through his counsel, Jonathan Van Hoven, and Defendant Josh Hummer, through his counsel, Clarke Ahlers (hereinafter "Defendants") and respectfully submit this Reply to the Government's Response to the Defense Motion for a Hearing Pursuant to *Kastigar v. United States* (Doc 72).

Introduction

The Defendants submit that the Government's case, despite its best efforts otherwise, has been tainted by both direct and derivative use of *Garrity*-protected statements.[1] The United States, in its response to the Defendants' original filing, practically concedes the existence of *Garrity* statements, thus qualifying their concession with the term "arguably."[2] The

---

[1] A good example of the complexity of this issue is the Government's recent concession that the DOJ trial team had been exposed to Defendant Edward Stigile's MSP/IIU statements. Doc 76.

[2] See Government's Response at page 3, top paragraph.

Government's use of the word "arguably" demonstrates that there are disputed issues of fact that must be resolved at a hearing.  To that end, as a first step in the process of resolving this issue, the Defendants submit that the United States must present the testimony of several core/key players in this RCI initiated investigation.

The Defense agrees with the Government's suggestion, in Doc 72 at page 25, that the hearing scheduled for July 2, 2013 be confined to whether the Defendants' statements were compelled.  To that end, as an initial step in resolving this issue, the defense suggests that the "Interviewers" be made available to testify at the July 2, 2013 hearing and that a second hearing be held once other *Garrity* witnesses, i.e., "Interviewees," are identified.[3]

Compelled Statements

The *Garrity* inquiry must begin with IIU investigator, Sgt. Mark Forrest.  He is the first government investigator to conduct interviews in this case.  The United States argues that any witness statements obtained were not compelled, but in their response outlines how the witnesses - now Defendants – "were sent to" or "told to report to" a conference room at RCI, to be interviewed by Sgt. Forrest[4].  The United States argues, somewhat disingenuously, that the DCSCS rules state "only that the officers 'shall' cooperate with an IIU investigation." "Shall" is defined by Webster's Dictionary as "used in laws, regulations, or directives to express what is mandatory."  A fair reading of all of the case law cited in both the Defendants' original pleading and the Government's response is that the "totality of the circumstances" is what should be

---

[3] The process of identifying "Interviewees" is fluid in nature.  Putting together the Government's witness list is an evolving process.  The absence of David Shoemaker's name in the Government's response, who the defense believes was exposed to *Garrity* statements and will be a government witness, demonstrates just how fluid this witness identification process is and will continue to be.  The testimony of the "Interviewers'" is certainly the most efficient way to begin the process.  However, the defense should not be bound by their testimony and should be allowed the opportunity to challenge it through identification and inquiry of "Interviewees."

[4] See Government's Response at pages 13 & 14, bottom & top paragraphs, respectively.

considered in deciding whether it was objectively reasonable to feel compelled to submit to an interview.[5]

In *State v. Aiken*, the Georgia Supreme Court rejected the analysis of *United States v. Frederick*,[6] (cited by the defense) and *United States v. Indorato*,[7] (cited by the prosecution) and applied a "totality of the circumstances" analysis. The Court stated:

> Instead, because the Supreme Court in *Garrity* employed the totality-of-the-circumstances test for evaluating whether the defendant's statement was coerced, and because this State's courts have vast experience applying this test, we hereby adopt that test for determining whether the statements that a public employee makes during an investigation into his activities are voluntary.

*State v. Aiken*, 282 Ga. 132, 135, 646 S.E.2d 222, 225 (2007)

The Defendants have met their minimal burden to require the United States to produce evidence that these interviews were not compelled.

The United States apparently dismisses the need for any reliable evidence on the issue at bar. References to comments made by interviewed witnesses are, in most instances, triple hearsay. On top of being unreliable by law, the Government's response cites statements made by biased cooperators, people who have allegedly perjured themselves and obstructed justice in the past and, in some instances, are not even identified.[8] There is not even a minutia of reliability attributed to "evidence" of this nature. Unlike an informant relied upon in an

---

[5] The consequence of failing to submit to an interview is self evident. There is no reasonable objective reason to not believe a substantial penalty would be paid for failure to cooperate with a mandatory administrative policy.

[6] 842 F.2d 382 (D.C. Cir. 1988).

[7] 628 F.2d 711 (1st Cir. 1980).

[8] As defense lawyers, it is a source of both mystery and bemusement, how common criminals are magically transformed into Queens for the Day, once they align themselves with the powers that be.

affidavit,[9] these individuals have no history of reliability and, in fact, demonstrate quite the contrary.

Reliance on hearsay statements by investigators of an adversary's team is likewise unreliable.[10] The core/key player witnesses include IIU investigator Det./Sgt. Mark Forrest and MSP Corporal Rich Bachtell. The prosecutor from the Maryland Attorney General's Office who prosecuted the criminal case,[11] and the prosecutor who handled the Administrative Hearings should all, at some point, be required to answer carefully tailored questions on their direct and derivative use of *Garrity* statements. For now, Sgt. Forrest and Corporal Bachtell should be produced for testimony by the United States on July 2, 2013. It is the only way to create a reliable record of what happened here.

Independent Source

The weakness in the Government's independent source argument is that *Garrity* not only excludes direct use, but also derivative use. Here, derivative use of these *Garrity* statements led to the identification of witnesses (prosecutorial leads) and in turn were utilized (or information therefrom) to motivate others to cooperate with authorities. A filter team put together years later does nothing to plug the leak which ultimately created the case. It may isolate DOJ from further taint, but does nothing to address the taint that created the case. This is the reason Sgt. Forrest and Corporal Bachtell are so critical in an analysis of what occurred here. As the United States

---

[9] The affidavit and subsequent potential for infringement of constitutional rights still triggers the need for a suppression hearing, with its attendant procedural safeguards. The same holds true for alleged compelled statements to law enforcement.

[10] See Government's Response at page 18, last paragraph.

[11] The Maryland Attorney General's Office prosecuted Hinckle and others in Washington County. The United States gives passing reference to this potential leak of *Garrity* materials. An order unsealing this case has been obtained. Many witness statements were utilized in the prosecution of this case. Several key witnesses in the case at bar participated in that case.

concedes, "the proper focus should be on whether the prosecutor used the immunized testimony to build a case against the defendant, not whether the prosecutor had read the testimony."[12] This is undoubtedly the reason the Fourth Circuit has not opined on the suitability of a filter team in all situations, *In re Grand Jury, John Doe No. G.J. 2005-6*, 478 F.3d. 581, 587 (4th Cir. 2007); nor is the process uniformly accepted by the Circuits.[13]

For these reasons, the Defendants respectfully request that the Court grant a *Kastigar* hearing in this matter, and require the Government to produce Sgt. Forrest and Corporal Bachtell for testimony.

Respectfully Submitted,

_____/s/_____
Christopher Michael Davis
Davis & Davis
1350 Connecticut Ave., NW
Suite 202
Washington, D.C. 20036
202-234-7300

_____/s/_____
Ty Kelly
Biran Kelly LLC
201 N. Charles Street, Suite 2001
Baltimore, MD 21201
410-625-2500

_____/s/_____
Christopher John Purpura
Law Office of William Purpura
Eight E. Mulberry Street
Baltimore, MD 21202
410-727-8550

---

[12] See Government's Response at page 21, last paragraph.
[13] See Government's Response at page 22, second paragraph.

          _____/s/_____
          Jonathan P. Van Hoven
          Law Offices
          of Jonathan P. Van Hoven, P.A.
          One North Charles Street, Suite 1215
          Baltimore, MD 21201
          410-576-0689

          _____/s/_____
          Clarke F. Ahlers
          Clarke F. Ahlers PC
          10450 Shaker Drive, Suite 111
          Columbia, MD 21046
          410-740-1444

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

          Respectfully submitted,

          _____/s/_____
          Christopher M. Davis